**PHILIP J. KAPLAN (State Bar No. 135735)**
philipkaplanlaw@gmail.com
**LAW OFFICES OF PHILIP J. KAPLAN**
3278 Wilshire Blvd., Suite 106
Los Angeles, California 90010
Telephone: (213) 480-8981
Facsimile: (213) 480-8941

Attorney for Plaintiff
JACOB MALAE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JACOB MALAE, an individual, | Case No.   3:21-cv-1453-SI |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. SECT. 1983 (FREE SPEECH RETALIATION); DISCRIMINATION (RACE); AND RETALIATION** |
| vs. | |
| CITY OF SANTA CLARA, a Municipal entity; PATRICK NIKOLAI, Chief of Police, in his individual and official capacities; TODD CUMMINS, in his individual and official capacities; and DOES 1-5, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

First Amended Complaint
Case No. 3:21-cv-1453-SI

Plaintiff Jacob Malae (hereinafter "Sergeant Malae" or "Plaintiff") hereby alleges as follows:

## PARTIES

1.     Plaintiff alleges that defendant City of Santa Clara (hereinafter sometimes "City" or "Santa Clara") is, and at all material times was, a Municipal entity, providing, among other things, law enforcement to Santa Clara through the Santa Clara Police Department (hereinafter sometimes "SCPD" or "Department").  Plaintiff alleges that SCPD is a "person" within the meaning of 42 U.S.C. Section 1983.

2.     Plaintiff alleges that defendant Patrick Nikolai (hereinafter sometimes "Chief Nikolai" or "Nikolai") is, and at all relevant times was, a policy-making official of SCPD, holding the rank and title of "Chief of Police." Defendant Chief Nikolai is, and at all material times was, the individual charged with the duty and granted the authority to render final decisions regarding, among other things, the promotion of personnel, including decisions whether or not to eliminate promotional/eligible lists, and approvals/disapprovals over the granting of overtime.  Defendant Nikolai is sued herein in both his official and individual capacities.

3.     Plaintiff alleges that defendant Todd Cummins (hereinafter "Captain Cummins" or "Cummins") is, and at all relevant times was, an individual employed by SCPD, holding the rank and title of "Captain." Plaintiff alleges that, at all material times, Captain Cummins was a policy maker and final decision maker concerning internal administrative or criminal investigations of alleged misconduct by personnel.  Further, Plaintiff alleges that, all material times, Cummins was acting as Plaintiff's immediate supervisor.  Defendant Cummins is sued herein in both his official and individual capacities.

4.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 5, inclusive, and therefore sues these Defendants

First Amended Complaint
Case No. 3:21-cv-1453-SI

by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's damages as alleged were proximately and legally caused by the Defendants' conduct.  At all times material herein, each Defendant was the agent, servant and employee of each of the remaining Defendants, and acting within the purpose, scope and course of said Agency, service and employment, with the express and/or implied knowledge, permission and consent of the remaining Defendants, and each of them, and each of said Defendants ratified and approved the acts of Defendants.

<strong><u>JURISDICTION/VENUE</u></strong>

5.      Jurisdiction of this court if founded upon 42 U.S.C. Section 1983 and 42 U.S.C. Section 2000e.  This court has pendent jurisdiction over the California State law claims, pursuant to 28 U.S.C. § 1367.  Venue is proper pursuant to 28 U.S.C. § 1400(a), because the defendants or their agents reside or may be found within this district and because defendants transact business, including the alleged tortious acts, within this district.

<strong><u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u></strong>

6.      Plaintiff has exhausted his administrative remedies by timely filing charges with the DFEH.  On or about September 15, 2020, the DFEH issued a right-to-sue notice, a true and correct copy of which is annexed hereto as Exhibit "A."

<strong><u>ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u></strong>

7.      Plaintiff has been employed by the SCPD for over twenty-two (22) years.

8.      Currently, Plaintiff holds the rank of "Sergeant."  He has been a Sergeant for over ten (10) years.

9.      Plaintiff is Samoan.  He was born and raised in Santa Clara.

First Amended Complaint
Case No. 3:21-cv-1453-SI

10.     Within the SCPD, Plaintiff has served in all four (4) divisions.  In each assignment, Plaintiff has excelled.  In addition to numerous commendations, Plaintiff has been bestowed with an "Officer of the Year" award and, in 2009, the "Lifesaving Award."

11.     Plaintiff enjoys an outstanding reputation in the community of Santa Clara.  A member of the Bellarmine College Preparatory Hall of Fame, Plaintiff went on to San Jose State where he played Division 1 football.

12.     Plaintiff lives with his family in San Jose.

### *Systemic Racism/Discrimination/A Rigged System For Command Staff*

13.     Plaintiff alleges that, despite his career at the SCPD and his many accomplishments, he – as also experienced by other minorities – has been the subject of discrimination and held back from promoting to command staff positions at SCPD.  Plaintiff contends that, unfortunately, despite the diversity represented in the community of Santa Clara, the SCPD suffers from systemic racism.

14.     Plaintiff contends that this discrimination is reflected, particularly, by statistics concerning SCPD's management.  Prior to 2018, forty-six (46) out of forty-nine (49) management employees were Caucasian.  In an organization (SCPD) that has been in existence since 1852, there have been only two (2) persons of color to ascend to a rank of Captain or higher.  Plaintiff alleges that the top of the SCPD organization does not come close to reflecting the community at large and the shift in demographics.  According to the 1990 census, 74% of reporting citizens in Santa Clara identified as Caucasian, 18.6% as Asian/Pacific Islander, 14.5% as Hispanic, and 2.5% as African American.  Ten years later, in 2000, the census saw a reduction in citizens identifying as Caucasian and a rise in minorities, as follows:  55.6% Caucasian, 29.3% Asian/Pacific Islander, 16% Hispanic, and 2.2% African American.  The most recent census shows a further decline in the Caucasian population and sharp increase in Asian/Pacific Islanders, as follows:  45% Caucasian, 37.7% Asian,

19.4% Hispanic, and 2.5% African American.

15.    Plaintiff alleges that, particularly when it comes to selecting a Chief of Police for SCPD, the system is rigged so that Caucasians are promoted to "Lieutenant," "Captain," and, then, put in a position to run for the top position. Plaintiff alleges that a major way that the Department maintains this inequitable system for top management positions, including Chief of Police, is by manipulation of the promotion system, including the examination process and the promotional list.

16.    For example, Plaintiff alleges that the current Chief, Defendant Nikolai, was the beneficiary of a "gamed" system.  In his case, Nikolai sat for the lieutenant's exam (as has Plaintiff, as more fully set forth below).  Nikolai was promoted to lieutenant after finishing fourth on his list.  The first two individuals at that time (both Caucasian) were promoted, so less than five people remained (one of whom was Johanna Green, of Mexican descent).  Although Green was passed over, the list was *not* eliminated in Nikolai's case, contrary to Civil Service Rule 4.8 (list may be abolished if fewer than 5 names).  Nikolai was promoted.  Green never was promoted, despite multiple opportunities to advance, and, eventually, left SCPD.

17.    Plaintiff alleges that the same passing over of qualified personnel, favoring Caucasians over diverse candidates, occurred in the case of Mark Shimada, who is of Japanese descent.  Shimada had worked every division, thrived in each assignment, made positive connections in the community, and was well-respected, senior member of his patrol team.  To Plaintiff's knowledge, Shimada was the only person who was required to take a FTO test ("Field Training Officer") <u>twice</u> (which he passed), after returning from a specialized assignment.  Despite exceptional evaluations, a record without discipline, Shimada was passed over multiple times, and the sergeant's list was eventually killed.

*The Lieutenant's Exam/Pretext*

18.     On October 16, 2019, Plaintiff sat for the Police Lieutenant Promotional examination.  Plaintiff placed #2 on the hiring list, earning a score of 91.5%.  Thereafter, in December 2019, Plaintiff participated in the "Chief's interview."

19.     The promotion to the position of Police Lieutenant (two slots) was to take place at the end of December 2019/January 2020.  The Department promoted an individual who was #1, a Caucasian.  This put Plaintiff in the #1 slot to be promoted.

20.     On January 1, 2020, Plaintiff received a text from then-Lieutenant Greg Hill.  Plaintiff had taken the day off to celebrate the New Year with his family.  The text read: "Hey brother, are you in today?  I dropped one on your desk.  A 69 PC."  Plaintiff responded that, because it was his case, he would handle and come in that day.

21.     Plaintiff left his family and came to the Department.  In looking over the case, Plaintiff realized that it did not have to be filed until the next day. What was the urgency?  At some point, then-Lieutenant Nikolai dropped in on the cubicle where Plaintiff was working.  He asked if he could meet with Plaintiff.

22.     The two then proceeded to the closed office of then-Lieutenant Hill. Nikolai opened the door and asked Plaintiff to sit down.  Nikolai proceeded to tell Plaintiff that he was being passed over for promotion.  The Department would be promoting someone lower down on the list.  Nikolai said he wanted to explain why.  Nikolai said there were two reasons:  First, Nikolai said that a female co-worker had reported that, on or about September 22, 2019, there was an interaction with Plaintiff that made her feel "threatened and unsafe."  (On or about September 22nd, 2019, Plaintiff had been informed that the Department would be denying him overtime pay in connection with a two-week homicide class in Monterey, California.)   Plaintiff was dumbfounded.  This alleged

complainant/co-worker was a friend. That there was a "problem" was far-fetched, in Plaintiff's view. Why was Plaintiff learning about this over three (3) months later? Nikolai informed Plaintiff that the co-worker had reported the "incident" to Captain Cummins, among other Captains.

23.    Plaintiff asked whether an investigation had been conducted. Nikolai replied, "No." However, Nikolai conceded, there probably should have been. Plaintiff, reeling from the news about being denied the Lieutenant's position and hearing about an alleged incident told Nikolai that he was being treated wrongly and differently from others. SCPD and City policy is to report misconduct and for such allegations to be investigated. Plaintiff let Nikolai know that he was being denied due process. Again, when asked about an investigation and why none was conducted, Nikolai had no answers.

24.    Nikolai added that there was another reason Plaintiff would not be advancing. An "unnamed" records specialist, Cummins stated, had purportedly reported that Plaintiff had asked that certain work be performed and that Plaintiff had "stood around waiting for that person to finish." Cummins continued that Plaintiff had said nothing and did not do anything; however, Plaintiff's "presence" was "intimidating."

25.    As with the other alleged "incident" above, no investigation of this matter involving the unnamed records specialist was investigated. Until that meeting with Nikolai, neither purported incident was discussed with Plaintiff, had not been reflected in any performance evaluation of Plaintiff (which had been highly favorable), and had not been documented and placed in Plaintiff's personnel file. And, if there *was* documentation, Plaintiff was given no notice and no opportunity to review and respond, which is a peace officer's right under the Peace Officers Bill of Rights, Section 3306.5.

26.    Plaintiff advised Nikolai that, if the above allegations were truly made, they should be taken seriously and investigated fully. Nikolai responded that they were <u>not</u> going to be investigating. Plaintiff asked whether he

First Amended Complaint
Case No. 3:21-cv-1453-SI

-7-

[Nikolai] had reviewed Plaintiff's most recent evaluation, Nikolai said, "No." The meeting was concluded.

27.     In early June 2020 and before the Telephonic Conference with the Peace Officers Association (discussed below), a later meeting occurred between Chief Nikolai and Plaintiff – this time in Chief Nikolai's Office. This meeting was called by Plaintiff. Plaintiff spoke to Chief Nikolai about a criminal indictment of a former SCPD Captain and good friend/close confidant of Chief Nikolai, Brian Gilbert (sometimes hereinafter "Gilbert"), and the racism connected to those charges, as more fully set forth below. Plaintiff told Nikolai in that meeting that systemic racism still existed at SCPD, including racism against Pacific Islanders and Samoans. Plaintiff asked Chief Nikolai what steps he would be willing to take to address racism within SCPD, especially considering the current societal climate. Nikolai responded that Plaintiff was the only "unhappy" employee at the agency. Nikolai further distanced himself from Gilbert, referring to Gilbert as a "former employee" and a private citizen not bound by department rules or regulations. Plaintiff replied that Plaintiff was aware of the lengths the SCPD had gone to "protect" Gilbert and others while employed by SCPD. Plaintiff told Nikolai that, in addition to being concerned about racism within the department, Plaintiff was equally concerned about how the department had covered up improper behavior by Gilbert *while employed at SCPD* and other Caucasian officers. Plaintiff asked Nikolai, hypothetically, what would the community's response be should it be apprised of certain behavior by certain former employees (including Gilbert) and how SCPD covered up their actions? Plaintiff further asked whether the SCPD would be willing to work with community organizations, such as the NAACP, to promote change within the department? Nikolai shifted in his seat and gave no response. After approximately forty-five (45) minutes, the meeting was concluded.

First Amended Complaint
Case No. 3:21-cv-1453-SI

*Plaintiff Speaks Out To The POA And Chief Nikolai About Systemic Racism/Urges Action*

28.     After the above meeting with Chief Nikolai, on or about June 18, 2020, during a Telephonic Conference with the Peace Officers Association (POA) and its President (Alex Torke), Plaintiff discussed the FBI arrest and U.S. Federal indictment of a former SCPD Captain Brian Gilbert.  Plaintiff was openly critical of Gilbert, who had recently retired.  According to allegations made by an FBI special agent, Plaintiff is informed and believes, Gilbert, who had been hired by eBay as a security employee, was engaged in a scheme to harass publishers of a newsletter critical of eBay.  Among other allegations made by the FBI, Plaintiff is informed, believes, and alleges that Gilbert created (with co-conspirators) a Twitter account with a Samoan-sounding name.  The objective was to attribute the threats to Samoans. The FBI Affidavit, on information and belief, included the following text by Gilbert: "If needed we create a Samoan POI [Person Of Interest] in Santa Clara.  Then he becomes our primary suspect.  This might help the entire op."

29.     On information and belief, the FBI Affidavit described various acts, including cyberstalking, to terrorize the publishers as follows:

- Sending items such as live cockroaches, books on surviving the loss of a spouse, pornography in the couple's names (but sent to their neighbors), a bloody pig mask, and a funeral wreath;
- "Doxing" the couple, inviting area college students to "swinger" parties at the couple's home after hours;
- Sending a team to surveil the couple and their activities;
- Establishing a Twitter account named @Tui_Elei and sending threatening messages such as: "Ur fat f**k p***y husband needs to put u in line c**t . . ."/"U are sick motha f***ers . . , and every one will kno!;" and
- Using the purported Tui_Elei Account to make the recipients

believe that person(s) controlling the Account had delivered the items (bloody pig mask, etc.) and were being hurt by criticism of eBay: "many familys including mine make money 2 pay 4 food cloths and rent by selling on ebay . . . UR stupid idiot comments r pushin buyers away from ebay and hurtin familys!!  STOP IT NOW!!  #ebay #ebayseller."

30.     Further, on information and belief, Gilbert offered to use his SCPD connections in order to mislead law enforcement about the scheme.

31.     In Plaintiff's discussion with the POA, Plaintiff was not only critical of Gilbert's alleged conduct, Plaintiff said that he was deeply disturbed that Gilbert and his confederates allegedly established a fake Twitter account that would be viewed as belonging to Samoans.  To Plaintiff, the Samoan reference was obvious and reprehensible:  Gilbert allegedly wanted to create, with all the stereotypes, an aura of menace.  Reminded of the incident where Plaintiff had apparently "intimidated" someone merely by his "presence," Plaintiff stated in the POA meeting that Gilbert had, if the allegations were true, tapped into a prejudice about Samoans.  Further, Gilbert's mindset, in Plaintiff's view, was evidence of a racism that currently infected SCPD, and Plaintiff said in the POA meeting that the SCPD suffered from systemic racism.  Further, with respect to Gilbert, Plaintiff was critical of criminal allegations that Gilbert was seemingly casual about offering SCPD assets to assist the conspirators in the eBay case in order to mislead Boston-area detectives investigating the case.  Plaintiff told the POA group that he was aware of conduct by Gilbert and others like him that was covered up in the past and which allowed them to promote at the SCPD and to protect their careers.

32.     Plaintiff urged the POA to make a statement encouraging members to read the FBI Affidavit concerning Gilbert and to denounce Gilbert's behavior, especially the racism connected to the scheme.  In Plaintiff's view, SCPD issued no public statement about the George Floyd incident (May 25

First Amended Complaint
Case No. 3:21-cv-1453-SI

'20), should have condemned what occurred, and should have made a statement about no tolerance for racism.  With the Gilbert criminal allegations, Plaintiff advised that the SCPD should now take the opportunity to denounce racism, especially since news outlets were running the eBay story with pictures of Brian Gilbert in a SCPD uniform.  The eBay/Cypberstalking story involving Gilbert was reported, locally, in news outlets such as The Silicon Valley Voice and the Santa Clara News, as well as national publications including the New York Times ("Inside eBay's Cockroach Cult:  The Ghastly Story of a Stalking Scandal"/published September 26 '20) and Bloomberg Law ("Bizarre Ebay Cyberstalking Plot To Draw Four Guilty Pleas (2)"/published September 23 '20).  POA President Torke disagreed, saying that he was satisfied with the Department's response.  Plaintiff is informed, believes, and alleges that Torke, a very close friend of Chief Nikolai, told Nikolai immediately or soon after the June 18th POA meeting about Plaintiff's comments and criticisms of the SCPD.  Several days later, on June 22, 2020, Nikolai attended a patrol meeting where Plaintiff was present, and Nikolai conceded in the patrol meeting that he had been informed by Torke of Plaintiff's comments/criticisms voiced at the POA meeting days before.  At that meeting, Nikolai, while announcing that there would be an "independent" investigation into Gilbert conducted by the City of Santa Clara, Plaintiff alleges that Nikolai downplayed at the meeting the significance of the criminal allegations against Gilbert, telling the officers that Gilbert was now retired and had no standing with the department.

33.     The following day, on June 19, 2020, Plaintiff walked through the hallways of SCPD and noted that Gilbert's photograph was prominently displayed on the SCPD "Legacy Wall."  In 2019, Gilbert had publicly endorsed then-Lieutenant Nikolai for Police Chief over then-Assistant Chief Dan Winter.  Later that day, Plaintiff encountered Chief Nikolai in the locker room.  Plaintiff told Chief Nikolai that Gilbert's photo should be removed from the "Legacy Wall," in light of the criminal allegations against Gilbert and the racism against

First Amended Complaint
Case No. 3:21-cv-1453-SI
-11-

Pacific Islanders that was evident from the establishment of "false flag" Samoan-sounding Twitter accounts. Plaintiff told Nikolai that Gilbert's involvement in the cyberstalking conspiracy, if true, discredited the SCPD; Gilbert had forfeited the right to have his picture remain on the "Legacy Wall." Nikolai refused. He said, "When there's a conviction."

34.    Plaintiff, thereafter, contacted Assistant Chief Rush. Plaintiff explained how the photo affected him, as a Samoan. He asked that it be taken down. Rush listened and, later that day, informed Plaintiff that Gilbert's photo *would* be removed. Plaintiff responded by emailing Chief Nikolai and thanking him.

### *Adverse Employment Actions*

35.    On June 29, 2020, eleven (11) days after speaking to the POA leadership about retired Captain Gilbert and about Plaintiff's view that racism had not yet been addressed either internally at SCPD and publicly and ten (10) days after speaking to Chief Nikolai in the locker room, the Lieutenant's Promotional List was eliminated. With the list's elimination, Plaintiff's promotion was stymied. Nevertheless, Plaintiff was led to believe that he stood a good chance of promoting from the next, successive Promotional List and should be "patient." However, on or about October 30, 2020, Plaintiff received a call from Assistant Chief Rush and was told that the new Promotional List was being eliminated. No reason was given.

36.    On or about August 26, 2020, Plaintiff alleges that Captain Cummins, through a lieutenant, issued an order denying Plaintiff and the Traffic Unit overtime. Despite grant funds that had been earmarked for the Traffic Unit, Plaintiff alleges that the grant was, inexplicably, allowed to expire leaving approximately $40,000 in funds that had not been used. Plaintiff alleges that Captain Cummins made the decision to allow the grant to expire, which Plaintiff contends was a further adverse employment action that Plaintiff attributes to his exercise of free speech under the First Amendment, as more

fully set forth below.

37.     On or about October 28, 2020, Plaintiff also learned that a SCPD officer and good friend of Plaintiff's, Officer Paul Lozada, had been informed by SCPD, despite Officer Lozada's experience, performance, and seniority, was summarily terminated.  Plaintiff alleges that SCPD command staff know of his strong friendship with Officer Lozada.  Plaintiff contends that the termination of Officer Lozada is another manner by which SCPD has taken an adverse employment action against Plaintiff, in retaliation for Plaintiff's exercise under the First Amendment.

## FIRST CAUSE OF ACTION FOR DAMAGES FOR
## DEPRIVATION OF CIVIL RIGHTS UNDER
## 42 U.S.C. SECTION 1983

**(For Free Speech Retaliation -- Against Defendants City of Santa Clara, Patrick Nikolai, and Todd Cummins, in their individual and official capacities)**

38.     Plaintiff hereby adopts, incorporates, and reiterates all of the preceding allegations of this complaint.

39.     The conduct of Defendants deprived Plaintiff of his rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, the right to free speech under the First Amendment.

40.     By speaking out about systemic racism at SCPD, criticizing SCPD for failing to speak publicly about racism, by raising questions about the criminal allegations against Gilbert and voicing concerns that there were individuals currently at the SCPD who would have assisted Gilbert in the eBay scheme, and by accusing the SCPD of covering up Gilbert's past behavior at the SCPD, as more fully set forth herein, Plaintiff was speaking out, as a private citizen rather than as a public employee, on matters of public concern and, thus, was engaged in protected speech.  When Plaintiff made his

First Amended Complaint
Case No. 3:21-cv-1453-SI

statements to the POA it was after hours and on own Plaintiff's own time.  This was not a task Plaintiff was being paid to perform.  Further, Plaintiff had no official duty to speak to the POA.  When Plaintiff spoke to Chief Nikolai, in Nikolai's office and in the locker room, as more fully set forth herein, this discussion was not the product of tasks that Plaintiff was being paid to perform.  Plaintiff had no official duty to speak to Chief Nikolai about the matters discussed in those two meetings.  With respect to the issue of 'public concern,' Plaintiff contends that his speech was relevant to the public's evaluation of the performance of the SCPD, in terms of racism that Plaintiff contends still exists within the Department, SCPD's race relations with the community at large, SCPD's policy on use-of-force (another reason why Plaintiff had urged SCPD to issue a public statement), Plaintiff's concern for potential corruption within the Department, in light of the criminal allegations against Gilbert, as well as Plaintiff's charge that SCPD had covered up behavior of Gilbert while employed with the SCPD.  Further, Plaintiff contends that the matters of race and use-of-force, particularly those involving George Floyd, were major news stories of 2020/2021.  Meanwhile, Gilbert's involvement in the eBay cyberstalking case was reported in both the local and national news.

41.   Plaintiff alleges that he had no official duty to make the statements he made to both the POA and to Chief Nikolai, as set forth hereinabove.

42.   By terminating the Lieutenant's Promotional List and disallowing Plaintiff overtime, Defendants took adverse employment actions against Plaintiff.

43.   Plaintiff further alleges that Defendants would not have taken the adverse employment actions above, absent the protected speech by Plaintiff alleged herein.

44.   Plaintiff alleges that his speech, as more fully set forth herein, was a substantial or motivating factor behind the termination of the Lieutenant's Promotional list, on June 29, 2020, and the denial of overtime, on or about

First Amended Complaint
Case No. 3:21-cv-1453-SI

August 26, 2020.

45.     Plaintiff alleges that, by denying Plaintiff's request for a take-down of Gilbert's photo, Chief Nikolai was expressing his opposition to Plaintiff's speech.

46.     In performing these acts, Defendants acted under color of state law. The acts of Defendants Nikolai, and Cummins were the moving force behind the constitutional violation alleged herein.  Therefore, Defendants Nikolai and Cummins are liable, in both their individual and official capacities, and City of Santa Clara is liable under *Monell.*

47.     As a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has been damaged by loss of earnings and earning capacity, impairment of his ability to obtain employment within his profession, damage to his reputation, humiliation, fear, anxiety, torment, degradation and extreme emotional distress in an amount according to proof but not less than Three Million Dollars ($3,000,000).

48.     Plaintiff is entitled to his attorney's fees pursuant to 42 U.S.C. Section 1988.

49.     Plaintiff is informed and believes and thereon alleges that the above-described acts of Defendants depriving Plaintiff of his constitutionally protected rights, privileges and immunities was done with evil motive or intent, or with reckless or callous indifference to Plaintiff's rights.  Accordingly, Plaintiff seeks an award of punitive damages against the individual defendants in an amount according to proof.

### *No Qualified Immunity*

50.     At the time of Plaintiff's speech and the alleged adverse actions taken by Defendants, the contours of the law concerning the First Amendment right to free speech, including without limitation where an individual is making statements about systemic racism within a governmental agency (the SCPD), and about potential corruption within the Department (*viz.,* that a former, high-

First Amended Complaint
Case No. 3:21-cv-1453-SI

ranking employee of the SCPD, Captain Gilbert, was prepared to use assets of the SCPD to further a criminal conspiracy), as well as the law concerning the unlawfulness of government retaliation against a private citizen for the exercise of First Amendment rights, were clearly established.

## SECOND CAUSE OF ACTION FOR DAMAGES FOR DISCRIMINATION (RACE)

### (Against Defendant City of Santa Clara)

51.     Plaintiff hereby adopts, incorporates, and reiterates all of the preceding allegations of this complaint.

52.     Plaintiff alleges that, in addition to the adverse employment actions and constructive discharge alleged above, he was subjected to discrimination and disparate treatment based on his Samoan race/national origin in at least the following respects:

53.     Plaintiff was ranked #2 on the eligibility list, based on the Lieutenant's exam, given October 16, 2019.  Nevertheless, that Lieutenant's list was eliminated, despite the fact that, on prior occasions, the Promotional list has been held open (notably, for a Caucasian applicant) even though there have been five (5) or fewer on the list.  With respect to the most recent Lieutenant's exam, SCPD promoted #1 and #3 off the list, while Plaintiff, who was #1 on the last list, has been held back.

54.     Plaintiff alleges that he was more qualified than similarly situated, white officers who sought the same position, yet he was denied a promotion.

55.     Plaintiff alleges that he was discriminated against on the basis of race and national origin (Samoan) and that this was a substantial motivating reason for the adverse employment actions, including failing to promote and the denial of overtime as alleged above.

56.     Plaintiff further alleges that the purported allegations by co-employees about feeling "unsafe" and "intimidated," and SCPD's position that such incidents were the reasons Plaintiff did not promote, were/are a pretext.

First Amended Complaint
Case No. 3:21-cv-1453-SI

57.     Plaintiff alleges that he was harmed as a result, in an amount according to proof but not less than Three Million Dollars ($3,000,000).

## THIRD CAUSE OF ACTION FOR DAMAGES FOR RETALIATION

### (Against Defendant City of Santa Clara)

58.     Plaintiff hereby adopts, incorporates, and reiterates all of the preceding allegations of this complaint.

59.     Plaintiff alleges that his criticisms about racism and failing to promote non-white officers constituted protected activity under the Fair Employment and Housing Act [Cal. Gov. Code § 12940 (h)] and under Title VII of the Civil Rights Act of 1964, because Plaintiff had opposed practices forbidden under FEHA and under Title VII.

60.     Plaintiff alleges that Defendants subjected Plaintiff to adverse employment actions, as more fully set forth above, which resulted in material changes to the terms of Plaintiff's employment, impaired Plaintiff's employment in a cognizable manner, and/or injured Plaintiff in his employment.

61.     Plaintiff alleges that Plaintiff's above complaints about the lack of diversity, failure to hire, and failure to promote diverse candidates were motivating reasons behind the adverse employment actions taken by Defendants, and each of them.

62.     Plaintiff was harmed.

63.     Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

64.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained and will continue to suffer harm and damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial, but not less than Three Million Dollars ($3,000,000).  Such damages include, but are not limited to:

First Amended Complaint
Case No. 3:21-cv-1453-SI

        a.      Loss of salary and other valuable employment
benefits;

        b.      Prejudgment interest and interest on the sum of damages at
the legal rate; and

        c.      Other consequential damages, including damages for shame,
humiliation, mental anguish, and emotional distress caused by Defendants'
conduct.

        65.     In addition, Plaintiff is entitled to his attorney's fees in prosecuting
this lawsuit, pursuant to California Government Code § 12965 (b).


        WHEREFORE, Plaintiff prays for judgment against Defendants,
and each of them, as follows:

        1.      For compensatory damages (both special and general
damages) according to proof, but not less than $3,000,000 dollars;

        2.      For past, present, and future wage losses and other benefits;

        3.      For pain and suffering, as well as mental anguish damages;

        4.      For punitive damages against the individual defendants in an
amount according to proof;

        5.      For attorney's fees pursuant to 42 U.S.C. Section 1988,
California Government Code Section 800, California Code of Civil Procedure
Section 1021.5 and as otherwise permitted under law;

        6.      For prejudgment interest;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

First Amended Complaint
Case No. 3:21-cv-1453-SI

-18-

1           7.     For costs of suit incurred herein; and

2           8.     For such other and further relief as this court may deem just

3   and proper.

4

5   DATED:  May 11, 2021            LAW OFFICES OF PHILIP J. KAPLAN

6

7                        By ***/s/Philip J. Kaplan***

8                           Philip J. Kaplan

9                           Attorney for Plaintiff
                             JACOB MALAE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint
Case No. 3:21-cv-1453-SI

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action pursuant to Federal Rules of Civil Procedure, Rules 38 and 81.


Dated:  May 11, 2021          LAW OFFICES OF PHILIP J. KAPLAN


                              */s/Philip J. Kaplan*
                              PHILIP J. KAPLAN
                              Attorney for Plaintiff
                              JACOB MALAE

First Amended Complaint
Case No. 3:21-cv-1453-SI

# EXHIBIT "A"



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                      GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                      KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

September 15, 2020

Jacob Malae



RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202009-11253815
      Right to Sue: Malae / Nikolai et al.

Dear Jacob Malae:

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
September 11, 2020 because an immediate Right to Sue notice was requested. DFEH
will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

1

## **PROOF OF SERVICE**

2

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within entitled action.  I am employed at 3278 Wilshire Blvd., Suite 106, Los Angeles, CA 90010.

5

6

     On May 11, 2021, I served the within **FIRST AMDNED COMPLAINT FOR AMAGES FOR DEPRIVATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. SECT. 1983 (FREE SPEECH RETALIATION); DISCRIMINATION (RACE); AND RETALIATION** upon interested parties in this proceeding or action by E-Mailing a true and correct copy, addressed as follows:

7

8

9

10

### **See Attached Service List**

11

12

 (X)  **BY ELECTRONIC SERVICE PROVIDER:**  I am "readily familiar" with the firm's practice for filing electronically.  Through use of the Court's CM/ECF electronic filing system, I arranged a true and correct copy of the above-referenced document to be electronically served to the e-mail address(es) registered with the court this day in the ordinary course of business following ordinary business practices.

13

14

15

16

()    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

17

18

(X)   (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

19

20

     Executed on May 11, 2021, at Los Angeles, California.

21

22

                    */s/Philip J. Kaplan*
                    Philip J. Kaplan

23

24

25

26

27

28

| 1 | **Case Name:** | **MALAE v. CITY OF SANTA CLARA ETC. ET AL.** |
|---|---|---|
| 2 | **Case No.:** | **3:21-cv-1453-SI** |

---

## MAILING/SERVICE LIST

**Attorneys for Defendants City of Santa Clara etc. et al.**

LIEBERT CASSIDY WHITMORE
Morin I. Jacob, Esq.
mjacob@lcwlegal.com
Anthony D. Risucci, Esq.
arisucci@lcwlegal.com
135 Main Street, 7th Floor
San Francisco, CA 94105