UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MALAE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SANTA CLARA, *et al.*,<br><br>    Defendants. | Case No. 21-cv-01453-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO AMEND**<br><br>Re: Dkt. No. 23 |

Defendants have moved to dismiss the first amended complaint. The Court previously determined that the motion was appropriate for determination without oral argument, in accordance with Local Rule 7-1(b). For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART. The Court grants plaintiff leave to amend. The amended complaint shall be filed no later than **August 17, 2021.**

**BACKGROUND**

Plaintiff Jacob Malae has worked for the Santa Clara Police Department ("SCPD") for over 22 years, and he has been a Sergeant for over ten years. First Amended Compl. ¶¶ 7-8. Malae is Samoan, and he alleges that defendants have discriminated against him on the basis of his race and national origin by denying him promotions to command staff positions at SCPD and denying him overtime pay to which he was entitled. Malae also claims that defendants retaliated against him based on his speech after he spoke out about systemic racism and possible corruption within the SCPD. Defendants are the City of Santa Clara, SCPD Chief of Police Patrick Nikolai, and Captain Todd Cummins, Malae's supervisor.

Malae claims that the promotional process for top management positions at SCPD is

discriminatory and "rigged" in favor of Caucasians, and he alleges that one way the inequitable system is maintained is through manipulation of the examination process and promotional lists for management positions. Malae alleges that although he scored the second highest on an October 2019 Police Lieutenant's promotional exam and was next in line to be promoted, in January 2020 Chief Nikolai told him that he was being passed over for promotion because one SCPD employee had reported that she had had an interaction with Malae that made her feel "threatened and unsafe" and another SCPD employee had reported that on one occasion he/she found Malae's "presence" "intimidating," although Malae "had said nothing and did not do anything." *Id.* ¶¶ 20-25. "Until that meeting with Nikolai, neither purported incident was discussed with Plaintiff, had not been reflected in any performance evaluation of Plaintiff (which had been highly favorable), and had not been documented and placed in Plaintiff's personnel file." *Id.* ¶ 25. SCPD and City policy is for allegations of misconduct to be investigated, and when plaintiff asked Nikolai why investigations were not conducted regarding either complaint, "Nikolai had no answers." *Id.* ¶ 23.

In early June 2020, Malae met with Chief Nikolai in his office and discussed systemic racism at SCPD, including against Pacific Islanders and Samoans, and he asked about any steps Chief Nikolai would take to address racism within the department. *Id.* ¶ 27. In that conversation Malae also raised the recent federal criminal indictment of a former SCPD captain, Brian Gilbert, and Malae expressed his concern about the "racism connected to those charges"[1] and his concerns about how the department had covered up improper behavior by Gilbert and other Caucasian officers while they were employed at SCPD. *Id.* ¶ 27. Chief Nikolai responded by stating "plaintiff was the only 'unhappy' employee at the agency." *Id.* at ¶ 27. Chief Nikolai then "shifted in his seat and gave no response" when plaintiff asked whether "SCPD would be willing to work with community organizations, such as the NAACP, to promote change within the department." *Id.*

---

[1] After working at SCPD, Gilbert worked at eBay as a security employee. *Id.* ¶ 28. Gilbert was criminally indicted for "engaging in a scheme to harass publishers of a newsletter critical of eBay." *Id.* Among other allegations, plaintiff alleges on information and belief that Gilbert and his co-conspirators created a Samoan-sounding Twitter name to make online threats to the newsletter publishers, Gilbert sent a text proposing creating a Samoan person of interest in Santa Clara to take the blame for the scheme, and Gilbert also allegedly offered "SCPD assets to assist the conspirators in the eBay case." *Id.* ¶¶ 28-31.

2

1    Around June 18, 2020, plaintiff discussed the indictment of Gilbert during a Telephonic
2    Conference with the Peace Officers Association ("POA") and its President (Alex Torke). *Id.* ¶ 28.
3    Plaintiff believed Gilbert wanted to create an "aura of menace" with his Samoan references and that
4    this mindset was "evidence of racism that currently infected SCPD." *Id.* ¶ 31. Malae told the POA
5    group that "he was aware of conduct by Gilbert and others like him that was covered up in the past
6    and which allowed them to promote at the SCPD and to protect their careers," urged the POA to
7    make a statement "encouraging members to read the FBI Affidavit concerning Gilbert and to
8    denounce Gilbert's behavior," and informed the POA that "SCPD issued no public statement about
9    the George Floyd incident (May 25, '20), should have condemned what occurred, and should have
10   made a statement about no tolerance for racism." *Id.* at ¶¶ 31-32. Malae also expressed his view
11   that the SCPD should make a statement denouncing racism, "especially since news outlets were
12   running the eBay story with pictures of Brian Gilbert in a SCPD uniform." *Id.* ¶ 32. POA president
13   Torke responded that "he was satisfied with the department's response." *Id*. On June 22, 2020,
14   Chief Nikolai stated in a patrol meeting "he had been informed by Torke of Plaintiff's
15   comments/criticisms voiced at the POA meeting days before." *Id.*

16   On June 19, 2020, plaintiff told Chief Nikolai in the SCPD locker room that Gilbert's photo
17   should be "removed from the [department's] 'Legacy Wall' in light of the criminal allegations
18   against Gilbert and the racism against Pacific Islanders [] evident from the [] Samoan-sounding
19   Twitter accounts." *Id.* ¶ 33. Chief Nikolai stated he would not take down Gilbert's picture until
20   "there's a conviction." *Id.* However, after Malae contacted Assistant Chief Rush and told him how
21   seeing Gilbert's photo affected him as a Samoan, Rush told Malae that Gilbert's photo would be
22   taken down, and the photo was removed. *Id.* ¶ 34.

23   On June 29, 2020, the Lieutenant Promotional List including plaintiff as a candidate was
24   terminated. *Id.* ¶ 35. The termination occurred 11 days after plaintiff spoke at the POA and 10 days
25   after he spoke to Chief Nikolai. *Id.* On August 26, 2020, Captain Cummins denied plaintiff and the
26   entire Traffic Unit overtime. *Id.* ¶ 36. Plaintiff alleges the funds earmarked for the Traffic Unit
27   were "inexplicably[] allowed to expire leaving approximately $40,000 in funds that had not been
28   used." *Id.*

3

On or around October 28, 2020, plaintiff's close friend Officer Lozada was "summarily terminated" despite Officer Lozada's experience, performance and seniority. *Id.* ¶ 37. Malae alleges that "SCPD command staff know of his strong friendship with Officer Lozada" and that "the termination of Officer Lozada is another manner by which SCPD" has retaliated against Malae. On October 30, 2020, Assistant Chief Rush called plaintiff and informed him the second, new Promotional List including plaintiff was eliminated, and he provided no reason. *Id.*

Plaintiff filed suit in this court on March 1, 2021 alleging three causes of action: (1) Deprivation of Civil Rights under 42 U.S.C. § 1983 for Free Speech Retaliation, against the City of Santa Clara, Nikolai and Cummins; (2) Race Discrimination against the City of Santa Clara; and (3) Retaliation under California's Fair Employment and Housing Act ("FEHA") and Title VII of the Civil Rights Act of 1964, against the City of Santa Clara.[2]

### I. First Cause of Action: 42 U.S.C. § 1983 Claim Against Defendants City of Santa Clara, Cummins and Nikolai

Plaintiff alleges defendants violated plaintiff's rights under the First Amendment by retaliating against him based on his speech. Plaintiff alleges his speech regarding systemic racism within the SCPD, potential SCPD corruption, and accusations of SCPD cover-ups of past employee misconduct is protected under the First Amendment. FAC ¶ 40. Plaintiff alleges that defendants, acting under color of state law, retaliated against him for this protected speech by terminating the Police Lieutenant promotional lists which listed plaintiff, denying plaintiff overtime, and terminating plaintiff's friend Officer Lozada. *Id.* ¶¶ 37, 42-43.[3]

---

[2] The FAC does not state whether the second cause of action is brought under Title VII and/or FEHA, and the FAC states that the third cause of action is brought under Title VII and FEHA. Defendants' motion and reply treat both causes of action as if they are brought under both statutes, while plaintiff's opposition refers to the second and third causes of action as "state law" claims. In the amended complaint, plaintiff shall clarify whether these causes of action are brought under state and/or federal law. Because the elements of the claims are largely the same under state or federal law, the Court's analysis in this order applies regardless of which law applies.

[3] Although paragraph 37 of the FAC alleges that Officer Lozada was terminated in retaliation for plaintiff's speech, the first cause of action focuses on the termination of the promotional lists and the denial of overtime as the alleged retaliation. Plaintiff's opposition does not mention Officer Lozada's termination, and thus it is unclear whether plaintiff has abandoned this allegation. If plaintiff wishes to pursue the claim that Officer Lozada's termination was

4

"It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The Ninth Circuit has articulated a five-part inquiry for First Amendment retaliation claims, three elements of which are relevant at this stage in litigation: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)); *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

Defendants move to dismiss the first cause of action on several related grounds. Defendants contend that plaintiff's official capacity claims against defendants Cummins and Nikolai should be dismissed as redundant because plaintiff is suing the City, and that the individual capacity claims are unsupported by factual allegations regarding how Cummins and Nikolai retaliated against Malae based on his speech. Defendants also contend that the claim against the City should be dismissed because plaintiff has not alleged a basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Finally, defendants contend that plaintiff has not alleged the elements of a First Amendment retaliation claim.

### A. Cummins and Nikolai

The FAC alleges that plaintiff brings suit against defendants Cummins and Nikolai in their individual and official capacities. FAC ¶¶ 2-3. The Court agrees with defendants that plaintiff's official capacity claims against Cummins and Nikolai are duplicative of the claim against the City because a "state official in his or her capacity . . . is no different from a suit against the State itself," *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 62, 71 (1989). Accordingly, the Court GRANTS defendants' motion to dismiss the official capacity claims against the individual defendants.

Defendants also move to dismiss the individual capacity claims. "Unlike an official capacity

---

retaliatory, the amended complaint must include more allegations about the termination, including facts supporting a claim that the termination was made in retaliation for plaintiff's speech.

5

claim, where the constitutional injury 'must be attributable to [an] official policy or custom,' an individual capacity claim 'hinges upon [the individual defendant's] participation in the deprivation of constitutional rights.'" *Torres v. Goddard*, 793 F.3d 1046, 1057 (9th Cir. 2015) (internal citation omitted). Further, the complaint must plausibly allege "that each of the defendants was an integral participation in the violation" of the constitutional right. *Keates v. Koile*, 883 F.3d 1228 at 1242-43 (9th Cir. 2018).

Plaintiff alleges Captain Cummins is a "policy maker and final decision maker concerning internal administrative or criminal investigations of alleged misconduct by personnel" and that Cummins retaliated against plaintiff by denying him overtime. FAC ¶¶ 3, 36, 42. However, the FAC does not allege that Captain Cummins knew of plaintiff's speech before denying plaintiff overtime, nor does plaintiff allege any facts indicating that plaintiff's protected speech was a substantial or motivating factor in Captain Cummins' decision to deny plaintiff overtime. In addition, the FAC is unclear as to whether plaintiff claims that Captain Cummins was involved in other allegedly retaliatory acts, such as the decision to eliminate the promotional lists. In the amended complaint, plaintiff shall clarify Captain Cummins' role in the alleged retaliation, and include any facts that support plaintiff's claim that his protected speech was a substantial or motivating factor in the adverse employment action.

Plaintiff alleges Chief Nikolai is "charged with the duty and granted the authority to render final decisions regarding, among other things, the promotion of personnel, including decisions whether or not to eliminate promotional/eligible lists, and approvals/disapprovals over the granting of overtime" and that Chief Nikolai was witness to or knew about plaintiff's speech. *Id.* ¶¶ 2, 27, 32, 33-34. However, the FAC does not explicitly allege that Nikolai was involved in the decisions to terminate the promotional lists and deny overtime to plaintiff. The amended complaint shall clarify Chief Nikolai's role with regard to the alleged retaliatory acts.

Accordingly, the Court GRANTS plaintiff leave to amend the claims against defendants in their individual capacities. Because the Court is granting plaintiff leave to amend, the Court finds it unnecessary to address defendants' arguments about qualified immunity. If plaintiff pursues individual claims against defendants Nikolai and Cummins, defendants may renew their assertion

of qualified immunity.

### B.     Municipal Liability Under *Monell*

Local government entities are "persons" subject to liability under § 1983 where official policy or custom causes a constitutional tort, *see Monell*, 436 U.S. at 690; however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, *see Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691.  Thus, a public entity "cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691.

To establish an official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one of the following to survive dismissal of its claim: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; or (3) a final policymaker's involvement in, or ratification of, the conduct underlying the violation of rights.  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Defendants contend that plaintiff makes formulaic recitations of *Monell* liability and fails to plead "*any* official City policy, practice, or custom demonstrating the City routinely violates employees' 1st Amendment rights or retaliates against employees that speak on matters of public concern."  Def's Motion at 18-19.

The FAC alleges that defendants Chief Nikolai and Captain Cummins acted "under color of state law," were the "moving force behind the constitutional violation alleged [in]" the first cause of action, and thus the City of Santa Clara is liable under *Monell*.  FAC ¶ 46.  Plaintiff's opposition also asserts that the City is liable because the SCPD has a *de facto* policy of manipulating the examination and promotional list.  Pl's Opp'n at 22.

The Court agrees with defendants that the FAC does not adequately allege a basis for *Monell* liability.  As discussed *supra*, although the FAC alleges that Cummins and Nikolai are final

policymakers, the FAC does not sufficiently allege their "involvement in, or ratification of, the conduct underlying the violation of rights" – retaliating against plaintiff on account of his speech. If plaintiff can allege that Cummins and/or Nikolai made the decisions to deny plaintiff overtime and to terminate the promotional lists in retaliation for plaintiff's speech, those allegations would support a *Monell* claim against the City. *See Clouthier*, 591 F.3d at 1250; *see also Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002). As to plaintiff's argument that he has alleged a *de facto* policy of manipulating the examination and promotional process in favor of Caucasians and against people of color, the Court agrees with defendants that this allegation, on its own, does not support a *Monell* claim alleging that defendants retaliated against plaintiff *based on his speech*. Plaintiff's allegations about a rigged promotional process support his claims of discrimination based on race and national origin. Pleading *Monell* liability requires more facts showing a causal link between the alleged policy and plaintiff's First Amendment injury. *See Monell*, 436 U.S. at 690-92; *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).

### C. *Dahlia* Elements

Finally, although the Court concludes that plaintiff has not adequately alleged that his speech was a substantial or motivating factor in the adverse employment action for the reasons stated above, the Court finds as a pleading matter that the FAC sufficiently alleges the other required elements of a First Amendment retaliation claim, namely that plaintiff spoke on a matter of public concern and that plaintiff spoke as a private citizen. *See Dahlia*, 735 F.3d at 1067 (9th Cir. 2013).

Accordingly, the Court GRANTS defendants' motion to dismiss the first cause of action and GRANTS plaintiff leave to amend consistent with this order.

## II. Second and Third Causes of Action: Title VII and FEHA[4]

### A. Race/National Origin Discrimination

---

[4] Defendants initially moved to dismiss plaintiff's Title VII and FEHA claims on the ground that plaintiff had failed to file an administrative complaint. In response, plaintiff submitted a copy of his DFEH complaint. Dkt. No. 25-1. Accordingly, the Court finds that this issue is now moot.

The second cause of action alleges that the City discriminated against him on the basis of race and national origin. FEHA[5] makes it unlawful "[f]or an employer, because of the race, … [or] national origin … of any person … to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). Under FEHA, a "plaintiff may raise a presumption of discrimination by presenting a 'prima facie case,' the components of which vary depending upon the nature of the claim, but typically require evidence that '(1) [the plaintiff] was a member of a protected class, (2) [the plaintiff] was qualified for the position he [or she] sought or was performing competently in the position . . . held, (3) [the plaintiff] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance [that] suggests discriminatory motive.'" *Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 860 (2014) (internal quotation marks and citation omitted).

Defendants contend that plaintiff has not alleged facts demonstrating that similarly situated people outside his protected class were treated more favorably or other circumstances giving rise to an inference of discrimination.

The Court disagrees with defendants with regard to plaintiff's allegations regarding being passed over for promotion and the termination of the promotional lists. The FAC alleges that plaintiff is Samoan and that he was qualified for a promotion because he had received positive job evaluations and commendations, experience working in all divisions of the SCPD, and scored well on the Lieutenant's exam. Plaintiff also alleges that he was told he was being passed over for a promotion because of vague allegations that plaintiff's "presence" was "intimidating" and that plaintiff made a co-worker feel "threatened," although contrary to SCPD policies those allegations were never investigated or reported to plaintiff prior to him being told he was not receiving the promotion. Plaintiff also alleges that the promotional lists upon which he appeared were terminated without reason, and that other promotional lists from which Caucasian employees were promoted were not terminated. Those allegations support an inference of discriminatory motive. Further, plaintiff has alleged instances where non-Samoan/Pacific Islander SCPD employees were treated

---

[5] Plaintiff's opposition refers to the second cause of action as a state claim, and thus the Court analyzes this cause of action under FEHA.

1  more favorably than plaintiff with regard to the promotional process.

2  However, the Court agrees with defendants that plaintiff has not alleged facts suggesting a discriminatory motive with regard to the denial of overtime. Although the FAC alleges that the denial of overtime was discriminatory, FAC ¶ 55, plaintiff does not allege that similarly situated individuals outside of the protected class were treated differently, and to the contrary the FAC alleges that the entire Traffic Unit was denied overtime. *Id.* ¶ 36. Nor does the FAC allege any circumstances suggesting that the denial of overtime was due to a discriminatory motive. Plaintiff's opposition does not address the overtime denial in the context of his discrimination claim, and thus it is unclear if plaintiff has abandoned this allegation.

Accordingly, the Court DENIES defendants' motion to dismiss the discrimination claim to the extent plaintiff is challenging SCPD's failure to promote him and the termination of the promotional lists, and the Court GRANTS the motion as it relates to plaintiff's claim that the denial of overtime was discriminatory. When plaintiff amends the complaint, plaintiff shall specify whether the second cause of action is brought under Title VII and/or FEHA, and if plaintiff wishes to pursue the claim that the denial of overtime was discriminatory, plaintiff must allege additional facts suggesting discriminatory motive.

### B. Title VII and FEHA Retaliation

Plaintiff alleges that his criticisms about racism and the Department's failure to promote non-white officers constituted protected activity under FEHA and Title VII, and that defendants retaliated against him based on that speech. Thus, the third cause of action is based on the same facts and theory as the First Amendment retaliation cause of action.

FEHA bars employers from retaliating against employees, as an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part." Cal. Gov't Code § 12940(h). To allege a *prima facie* case of retaliation under FEHA (which is nearly identical to alleging a Title VII retaliation claim), a plaintiff must show: (1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse

action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Passantino v. Johnson and Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).

The Court finds plaintiff adequately pled the first two required elements. However, similar to the Court's analysis in preceding sections, plaintiff must allege a causal link between plaintiff's protected conduct and the alleged adverse employment actions to satisfy the causation element. Accordingly, the Court GRANTS defendants' motion to dismiss and GRANTS plaintiff leave to amend this cause of action.

### III.  Punitive Damages

Defendants contend, and plaintiff does not dispute, that punitive damages are not available against the City of Santa Clara under § 1983, Title VII or FEHA. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (§ 1983); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999) (Title VII); Cal. Gov't Code § 818 ("a public entity is not liable for damages awarded under Section 3294 of the Civil Code [punitive damages] or other damages imposed primarily for the sake of example and by way of punishing the defendant."); *State Personnel Board v. Fair Employment and Housing Comm'n*, 39 Cal.3d 422, 434 (1985) (§ 818 prohibits awards of punitive damages against municipalities in cases involving FEHA claims).

Plaintiff may seek punitive damages against the individual defendants under the § 1983 cause of action, the only cause of action alleged against the individuals. *See Dang v. Cross*, 422 F.3d 800, 808 (9th Cir. 2005) (punitive damages available under § 1983 where a defendant has acted maliciously, wantonly, oppressively, or in reckless disregard of the plaintiff's rights). If plaintiff pursues individual claims against defendants Cummins and Nikolai and wishes to seek punitive damages against these defendants, plaintiff is instructed to include factual allegations that meet the requisite standard.

### CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part

defendants' motion to dismiss:

(1) § 1983 First Amendment Retaliation: **DISMISSED** with leave to amend. If plaintiff amends this cause of action, plaintiff needs to allege a factual basis for suing the individual defendants in their individual capacities, bolster the *Monell* claim, and allege facts showing that plaintiff's speech was a substantial and motivating factor in the alleged adverse employment actions. Further, if plaintiff claims that Officer Lozada's termination was retaliatory, plaintiff must allege facts supporting such a claim.

(2) FEHA/Title VII Discrimination: **DENIED** as to claim that denial of promotions/termination of promotional lists was discriminatory, **GRANTED** with leave to amend with respect to claim that denial of overtime was discriminatory.

(3) FEHA/Title VII Retaliation: **DISMISSED** with leave to amend. Plaintiff needs to allege facts showing a causal link between the protected activity and adverse employment actions.

(4) Punitive Damages: The punitive damages claim against the City is **STRICKEN**, and the punitive damages claim against individual defendants is **DISMISSED** with leave to amend. Plaintiff can amend claims against individual defendants Chief Nikolai and Captain Cummins to include more detail of defendants' "malice or reckless indifference" if plaintiff sufficiently pleads individual defendants' liability in their individual capacities.

**IT IS SO ORDERED**.

Dated: August 9, 2021

SUSAN ILLSTON
United States District Judge