Morin I. Jacob, Bar No. 204598
mjacob@lcwlegal.com
Anthony D. Risucci, Bar No. 316587
arisucci@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105
Telephone:   415.512.3000
Facsimile:    415.856.0306

Attorneys for Defendants CITY OF SANTA CLARA, PATRICK NIKOLAI, and TODD CUMMINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| JACOB MALAE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SANTA CLARA, a Municipal entity; PATRICK NIKOLAI, Chief of Police, in his individual and official capacities; TODD CUMMINS, in his individual and official capacities; and DOES 1-5, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01453-SI<br><br>Complaint Filed: March 1, 2021<br>FAC Filed: May 11, 2021<br>SAC Filed: August 17, 2021<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:         October 8, 2021<br>Time:        10:00 a.m.<br>Courtroom: 1-17th Floor<br>Judge:       Hon. Susan Illston |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. LEGAL ARGUMENT ............................................................................................................2

    A. PLAINTIFF'S FIRST CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION REMAINS SUBJECT TO DISMISSAL. ........................................................................................................2

        1. There Remains No Plausible Causal Link Between Plaintiff's Speech and an Adverse Employment Action.............................2

            a. Opposition to Speech. ...................................................................3

            b. Pretextual Explanation of Adverse Action. ..................................4

        2. The Individual Defendants Should Be Dismissed. ....................................5

            a. Plaintiff Fails to Show Adequate Participation in a Constitutional Deprivation to Justify Individual Capacity Liability.......................................................................5

                i. "Denial" of Overtime.........................................................6

                ii. Elimination of Promotion Lists..........................................6

            b. The Individual Defendants are Entitled to Qualified Immunity.......................................................................................7

                i. Defendants' Reliance upon Ohlson v. Brady.....................7

                ii. Plaintiff's Reliance Upon Inapplicable Case Law. ...........................................................................................8

            c. Plaintiff Fails to Plead *Monell* Liability Against the City.................................................................................................9

                i. Cummins ............................................................................9

                ii. Nikolai...............................................................................10

    B. PLAINTIFF'S THIRD CAUSE OF ACTION FOR FEHA RETALIATION REMAINS SUBJECT TO DISMISSAL DUE TO AN IMPLAUSIBLE CAUSAL LINK. ...................................................10

    C. PLAINTIFF'S PLEA FOR PUNITIVE DAMAGES REMAINS CONCLUSORY. .........................................................................................11

III. CONCLUSION....................................................................................................................12

i

Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; 3:21-cv-01453-SI
9792570.1 SA460-023

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Creighton*
   483 U.S. 635 (1987)......................................................................................................................8

*Ashcroft v. al-Kidd*,
   563 U.S. 731, 741 (2011)............................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678, 686–687 (2009)..........................................................................................11

*Barone v. City of Springfield, Oregon*
   902 F.3d 1091 (9th Cir. 2018)....................................................................................................9

*Clouthier v. County of Contra Costa*
   591 F.3d 1232 (9th Cir. 2010)..................................................................................................10

*Coszalter v. City of Salem*
   320 F.3d 968 (9th Cir. 2003) .....................................................................................................2

*Dahlia v. Rodriguez*
   735 F.3d 1060 (9th Cir. 2013) ............................................................................................2, 4, 9

*Ellins v. City of Sierra Madre*
   710 F.3d 1049 (9th Cir. 2013) ................................................................................................3, 4

*Keates v. Koile*
   883 F.3d 1228 (9th Cir. 2018) ....................................................................................................6

*McKinley v. City of Eloy*
   705 F.2d 1110 (9th Cir. 1983) ....................................................................................................9

*Monell v. Dept. of Soc. Servs.*
   436 U.S. 658 (1978)..................................................................................................................10

*Neveu v. City of Fresno*
   392 F. Supp. 2d 1159 (E.D. Cal. 2005)....................................................................................12

*O'Brien v. Welty*
   818 F. 3d 920 (9th Cir. 2002) .....................................................................................................9

*Ohlson v. Brady*
   No. 20-15656, 2021 WL 3716784, (9th Cir. Aug. 23, 2021) .....................................................7

*Saucier v. Katz*
   533 U.S. 194 (2001)....................................................................................................................7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979, 988 (9th Cir. 2001) ..............................................................................................6

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

*Ulrich v. City and County of San Francisco*
    308 F.3d 968 (9th Cir. 2002) ....................................................................................... 2, 3, 5

ii

Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; 3:21-cv-01453-SI
9792570.1 SA460-023

Defendants CITY OF SANTA CLARA ("City"), PATRICK NIKOLAI ("Nikolai"), and TODD CUMMINS ("Cummins," collectively "Defendants") hereby submit their Reply Brief in support of their Motion to Dismiss Plaintiff JACOB MALAE's ("Plaintiff") Second Amended Complaint ("SAC").

I. **INTRODUCTION**

Defendants contend that Plaintiff has failed to plead sufficient allegations to demonstrate a causal link between Plaintiff's alleged speech and an adverse employment action, that the individual defendants participated in a constitutional violation, and other items that the Court found deficient or did not address in ruling upon Defendants' prior Motion to Dismiss, such as qualified immunity. The thrust of Defendants' argument is that the new allegations Plaintiff added to the SAC rely far too heavily upon conjecture, unreasonable assumptions, and ambiguous statements by officials other than the two individual Defendants. Plaintiff spends the majority of his Opposition simply reciting those same conclusory allegations. *See* ECF No. 41 at 1–4; 5–9; 11–20. Repeating conclusions does not somehow make them more plausible or less conclusory.

The Opposition offers little substance beyond that recitation. For example, Plaintiff goes to considerable length in the Opposition to respond to an argument that Defendants did not make: that Lozada's termination is not an adverse employment action for purposes of the First Amendment Retaliation claim. *See* ECF No. 41 at 17–18 (citing case law in the First Amendment Retaliation context). Defendants have argued that there is no plausible causal link between Lozada's termination and Plaintiff's speech, and that his termination is not an adverse employment action in the *FEHA* Retaliation context—but have not argued that it is not an adverse action in the First Amendment Retaliation context. *See* ECF No. 39 at 11–12; 18–19. After exerting effort to create this strawman argument, Plaintiff then concedes that he has "not located a case where a free-speech claimant pointed to the termination of a co-worker/close friend as an instance of retaliation." ECF No. 41 at 17:25–18:2. This analysis goes nowhere.

Plaintiff attempts to confuse the issues yet again when discussing Defendant Cummins' role in his tenuous claims. For example, when discussing *Monell* liability for the City, Plaintiff relies upon Cummins' alleged policymaking scope related to personnel investigations to argue

1

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

that the City should be liable for First Amendment Retaliation—despite the fact that Cummins' alleged failure to investigate occurred *months before* Plaintiff's speech events. *See* ECF No. 41 at 19–20; SAC ¶¶ 21–27. Plaintiff also uses Cummins' alleged failure to investigate when arguing that reasons offered for adverse actions relevant to this First Amendment Retaliation claim were "pretext," in an attempt to show a causal link under the *Ulrich* factors. *See* ECF No. 41 at 13–14. While the allegations about Cummins' failure to investigate allegations about Plaintiff's conduct may be relevant in the Discrimination claim, it strains credulity to shoehorn them into the First Amendment Retaliation claim when Plaintiff's speech occurred over five months later.

Because Plaintiff has failed to correct the deficiencies in the SAC outlined by the Court in ruling on Defendants' prior Motion to Dismiss, the Court should grant the instant Motion without leave to amend.

## II. LEGAL ARGUMENT

### A. PLAINTIFF'S FIRST CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION REMAINS SUBJECT TO DISMISSAL.

#### 1. There Remains No Plausible Causal Link Between Plaintiff's Speech and an Adverse Employment Action.

Defendants contend that the factual context laid out in the SAC does not plausibly indicate that Plaintiff was retaliated against for protected speech. *See* ECF No. 39 at 8–12. As a way of determining whether a causal link has been pled, the Ninth Circuit developed a three part test. Where it is shown that the employer knew of the speech, circumstantial evidence showing motive may fall into three, nonexclusive categories: "(1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) other evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 980 (9th Cir. 2002); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("*Ulrich* factors").

Plaintiff accuses Defendants of misstating the law on the legal test for determining whether a causal link exists between protected speech and an adverse employment action and "inviting the Court to depart from controlling precedent." ECF No. 41 at 3:10–17; 10:9–26.

2

Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; 3:21-cv-01453-SI
9792570.1 SA460-023

Defendants argue that temporal proximity between speech and an adverse employment action alone should not cause the Court to completely ignore the larger context. Nothing in *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013) contradicts that larger point. The *Ellins* Court said that evidence of "one of the three *Cozsalter* factors **may** be sufficient to allow a plaintiff to prevail in a public employee retaliatory speech claim." *Id*. at 1063 (emphasis added). The *Ellins* Court also quoted the language from *Cozsalter* that Defendants rely upon at length:

> [w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing **and the surrounding circumstances**.' 320 F.3d at 978. Nevertheless, we also held that '**[d]epending on the circumstances**, three to eight months is easily within a time range that can support an inference of retaliation.'

(*Ellins,* 710 F.3d at 1062 (emphasis added, quoting *Cozsalter*, 320 F.3d at 977–978.).  Again, Defendants ask that the Court look beyond mere timing alone to the fuller circumstances surrounding employment decisions in relation to Plaintiff's speech—as opposed to just mechanically stating that the timing is close enough and ending the inquiry.  That is consistent with the law of the Ninth Circuit, including the cases Plaintiff relies upon to say it is not.

After Plaintiff encourages the Court to completely ignore context in determining whether Defendants had a plausible retaliatory motive as the SAC is currently pled, he offers a contorted analysis of the second and third *Ulrich* factors.

### a.     Opposition to Speech.

The second *Ulrich* factor is "the employer's expressed opposition to the speech." *Ulrich* 308 F.3d at 980.  Defendants argue that there are no facts in the SAC that show that Nikolai or Cummins—the only two persons alleged to have participated in adverse employment actions against Plaintiff—"opposed" Plaintiff's speech.  At best there are Nikolai's ambiguous statements that Plaintiff was "the only 'unhappy'" employee at the agency and saying that he would take down Gilbert's photo "when there's a conviction."[1] SAC ¶¶ 27, 33.  Saying that Plaintiff is the

---

[1] As argued in the Moving Papers, the statement about Gilbert's photo on the Legacy Wall is not indicative of retaliatory motive, as the SAC makes clear that Nikolai agreed to take the photo down later that day.  SAC ¶ 34.

3

only unhappy employee at the agency is not indicative of opposition to the content of Plaintiff's speech. This one statement, followed by silence and "shifting in his seat"[2] does not rise to the level of comments made by the supervisor in *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013). The supervisor in that case expressed her "concern," "disappointment," and "dismay," with the plaintiff's speech, and even went so far to call the speech "counter-productive." *Id*. at 1063. Nikolai's one relevant statement also pales in comparison to other cases where opposition was relevant to a causal link. In *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013), for example, the plaintiff alleged that his superiors made threats toward him relating to his participation in an internal affairs investigation, and that three officers "incessantly harassed, intimidated and threatened [him] over the following weeks, to the point where his working conditions were 'fully consumed' by the intimidation." *Id* at 1064. Telling someone they are the only "unhappy" employee, followed by silence and shifting in a seat are nowhere near the level of opposition contemplated by case law. Nikolai's one ambiguous statement should not be sufficient to satisfy the second *Ulrich* factor that SCPD "opposed" Plaintiff's speech.

Puzzlingly, Plaintiff also relies upon statements allegedly made by Assistant Chief Rush that Plaintiff should "keep a low profile" and "not speak out" as evidence that SCPD opposed Plaintiff's speech. ECF No. 41 at 13:1–15, n. 7. This argument is problematic for a number of reasons and should be disregarded. First, as the SAC is drafted, Rush appears to have been attempting to *help* Plaintiff after his speech—not express that he opposed or disagreed with the content of what Plaintiff said. *See* SAC ¶ 44a. Second, Rush is not alleged to have participated in any adverse actions against Plaintiff, so his expression of "opposition" is irrelevant. Rush's statements are simply not relevant for determining whether Nikolai or Cummins opposed Plaintiff's speech.

### b.  Pretextual Explanation of Adverse Action.

Plaintiff provides a misleading analysis of the third *Ulrich* factor: pretext. This factor is stated in case law as "other evidence that the reasons proffered by the employer for the adverse

---

[2] Plaintiff argues that even *silence* and shifting in a seat are expressions of "opposition." ECF No. 41 at 12:9–27. That is an unreasonable assumption.

4

Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; 3:21-cv-01453-SI
9792570.1 SA460-023

employment action were false and pretextual." *Ulrich* 308 F.3d at 980.

Plaintiff attempts to pull a slight of hand in analyzing this factor by relying on allegations related to Plaintiff being "passed over" for promotion in January of 2020. *See* ECF No. 31 at 13:17–14:4 (discussing lack of investigations for allegations that Plaintiff was "intimidating" and made others feel "unsafe"). That adverse employment action is not relevant for the First Amendment Retaliation claim. This "evidence of pretext" is wholly irrelevant for determining whether Plaintiff was retaliated against based on his speech—which occurred over five months later. As alleged in the SAC, these purportedly pretextual reasons for Plaintiff not being promoted occurred on January 1, 2020. SAC ¶¶ 21–26. Plaintiff did not speak to Nikolai about Gilbert and systemic racism until early June of 2020. SAC ¶ 27. Plaintiff did not speak on the POA call until June 18, 2020. SAC ¶ 28. Plaintiff did not request that Gilbert's photo be taken down until June 19, 2020. SAC ¶ 33. The only relevant, alleged adverse employment actions that occurred after that point are not granting Plaintiff's overtime request and elimination of the promotion lists. Plaintiff offers no argument in the Opposition as to how explanations surrounding *those* adverse actions were pretextual—likely because the SAC offers no non-conclusory allegations to that effect.

It is clear that the third *Ulrich* factor is not present in the SAC as currently pled. Because Plaintiff relies exclusively on the first factor, the Court should find again that the causal link for Plaintiff's First Amendment Retaliation claim is insufficiently pled, and dismiss the claim.

### 2. The Individual Defendants Should Be Dismissed.

#### a. Plaintiff Fails to Show Adequate Participation in a Constitutional Deprivation to Justify Individual Capacity Liability.

Defendants argue that Plaintiff fails to sufficiently plead that Nikolai and Cummins participated in a deprivation of Plaintiff's constitutional rights to warrant individual capacity liability under *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) and related cases. ECF No. 39 at 12–14. Nikolai and Cummins should be dismissed from this action in their individual capacities.

/ / /

### i. "Denial"[3] of Overtime

In the Opposition, Plaintiff argues that Cummins denied his overtime request and therefore should be liable. He also points to an email from Carolyn McDowell that stated that Cummins *and Nikolai* would discuss the request as evidence that Nikolai also participated. ECF No. 41 at 14–15. Nikolai's connection to the denial of overtime is based entirely upon conjecture and speculation. McDowell's email, which was allegedly sent on August 13, 2021, does not explain what actually occurred between the email and when Plaintiff learned that the grant had expired, on October 2, 2020. SAC ¶ 44b. Plaintiff simply *concludes* that Nikolai must have participated in or ratified the decision because of what McDowell, a management analyst assigned to the Chief, stated over a month before. The Court should not entertain such an empty assumption *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). As for Cummins, Plaintiff relies upon the comments of Lieutenant Fitting regarding the productivity of the Traffic Unit as evidence that Cummins deprived Plaintiff of a constitutional right. *See* ECF No. 41 at 14:25–15:22. As pointed out in the Moving Papers, it is entirely unclear how comments about productivity of the Traffic Unit are related to Plaintiff's request for overtime. The SAC does not connect those dots, it just offers them up as separate occurrences and leaves the reader to infer or assume that they are somehow related. This is not sufficient to withstand dismissal. *Sprewell*, 266 F.3d at 988.

### ii. Elimination of Promotion Lists

Defendants argued in the Moving Papers that Plaintiff's allegations about Nikolai's elimination of the lieutenant promotion lists were factually bankrupt and could not support individual liability. *See* ECF No. 39 at 13:11–18. Plaintiff responds by reciting those same allegations. ECF No. 41 at 16:17–24. Again, keeping alive a sergeant's promotion list is not indicative that terminating a *lieutenant's* promotion list was retaliatory. That is not a plausible assumption. While Plaintiff alleges that Nikolai did, in fact, eliminate the lieutenant promotion

---

[3] Plaintiff has repeatedly alleged that Defendants "denied" his overtime request. The recently added allegations in the SAC demonstrate that such label is inaccurate, as the response was more passive: Plaintiff requested overtime, he did not hear back, and the grant eventually expired. *See* SAC ¶ 44b. Defendants adopt the "deny" term here, however, for the sake of brevity.

6

Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; 3:21-cv-01453-SI
9792570.1 SA460-023

lists, that fact alone should not justify individual liability given the greater context and weaknesses in Plaintiff's First Amendment claim.

### b. The Individual Defendants are Entitled to Qualified Immunity.

Defendants argue that qualified immunity applies because Plaintiff has not overcome the first element of qualified immunity: that the facts alleged show the officer's conduct violated a constitutional right. ECF No. 39 at 14:18–21. Due to the deficiencies in the causation analysis laid out above, the failure of Plaintiff's substantive claim dooms the claim under qualified immunity analysis as well. *Saucier v. Katz*, 533 U.S. 194, 201 (2001)

#### i. Defendants' Reliance upon Ohlson v. Brady.

Defendants also cited *Ohlson v. Brady*, No. 20-15656, 2021 WL 3716784, (9th Cir. Aug. 23, 2021) for the Ninth Circuit's recent, insightful discussion of just how difficult it can be for a public official to untangle the web of First Amendment jurisprudence, apply it to their particular situation, and make real-life personnel decisions under its shadow. Plaintiff goes to great lengths in the Opposition to demonstrate how *Ohlson* is "inapposite," but Defendants have already acknowledged that the case is not a perfect analogy to Plaintiff's claims. ECF No. 41 at 23–24; ECF No. 39 at 15:23 ("While Plaintiff's speech here was not so clearly within his job duties as the Plaintiff in *Ohlson*…").

Defendants' reliance upon *Ohlson* was primarily aimed at demonstrating how difficult even courts find it to apply the panoply of First Amendment case law to the public employment context. Under Plaintiff's theory of the law, for example, any public employee could be insulated from discipline for potentially years based upon the fact that they voiced their personal beliefs on a handful of occasions. That same employee could then sue their supervisors should they make *any* attempt to discipline them or do anything that they could contort into an adverse action, avert dismissal at the pleadings stage, and subject their supervisors to burdensome discovery and litigation. Can it honestly be argued that *every reasonable* official in these circumstances would have understood that they were violating Plaintiff's Constitutional rights by not granting one request for overtime? Or eliminating a promotion list that was not at capacity? *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Assuming *arguendo* that a reasonable official waded through

7

the dense thicket of First Amendment law for public employees, understood it, and should have known of a potential violation, what are they supposed to do if they must carry out their duties as supervisors against a potential litigant? Refrain indefinitely or face a lawsuit? Discussion in *Ohlson* captures these issues well and that is the purpose of Defendants' use of the case.

          ii.        *Plaintiff's Reliance Upon Inapplicable Case Law.*

In opposing Defendants' argument that Nikolai and Cummins should be shielded by qualified immunity, Plaintiff relies upon a number of cases that are entirely irrelevant or distinguishable. Citing inapplicable or distinguishable case law in the qualified immunity context is significant: Plaintiff must show whether the law was clearly established *under the facts of the present, speech case*. *See Anderson v. Creighton*, 483 U.S. 635, 639–640 (1987). Plaintiff's inability in this regard is indicative that the law is not clearly established on the present facts.

For example, Plaintiff relies upon the case of *O'Brien v. Welty*, 818 F. 3d 920, 936 (9th Cir. 2002) for the proposition that dismissal is not appropriate based upon qualified immunity "unless the court can determine, based on the complaint itself, that qualified immunity applies." ECF No. 41 at 10:3–6. This is an empty truism. The *O'Brien* Court ultimately held that the Plaintiff had sufficiently shown that the individual defendants there participated in a constitutional violation, but Defendants contend here that Plaintiff has failed in that respect. *Id*.

Next, Plaintiff relies upon *Barone v. City of Springfield, Oregon*, 902 F.3d 1091 (9th Cir. 2018) for a general statement about protecting speech when it seeks to bring to light violation of public trust. The individual defendants in Barone were dismissed at the summary judgment stage based upon qualified immunity. *Id*. at 1097, n. 1. Plaintiff also cites *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) for the proposition that speech about public employee pay should be protected—despite the fact that Plaintiff's speech *did not deal* with compensation of SCPD personnel. ECF No. 41 at 21:13–16.

Lastly, Plaintiff argues that he was exposing "corruption" at SCPD by speaking about Gilbert—a former officer no longer employed by SCPD—and comparing it to the case of *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013). *Dahlia* is distinguishable. The plaintiff there repeatedly told his superiors of his concerns about *current*, fellow officers beating robbery

8

suspects in interviews and alleged that his superiors made threats toward him relating to his participation in an internal affairs investigation that followed. *See id*. at 1063–1066. Plaintiff did not "expose corruption" with his speech—Gilbert's criminal conduct after he left SCPD was reported and known about by SCPD leadership. Plaintiff's speculation about allegations made against Gilbert after he left SCPD is not remotely similar to the officer in *Dahlia*.

Plaintiff also argues that the fact that speech occurred in private is not determinative of the qualified immunity inquiry, and that any speech made in a union context is protected. *See* ECF No. 41 at 21–22. While it is indisputable that Plaintiff's speech on the POA call was to a union as currently pled in the SAC, the content of the speech was effectively the same as his conversation with Nikolai just days before the call. *See* SAC ¶ 27. In the absence of context indicative of retaliatory animus, speech should not justify circumventing qualified immunity simply because it was reiterated again days later to a union. Based on the foregoing and the arguments in the moving papers, Defendants request that Nikolai and Cummins be dismissed because they are entitled to qualified immunity.

   **c.**   **Plaintiff Fails to Plead *Monell* Liability Against the City.**

Defendants argue in the Moving Papers that Plaintiff has failed to plead liability against the City under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff should not be able to rely upon bare allegations about an official's power to perform an action on behalf of an agency as the basis of municipal liability. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010). Defendants also argued that Cummins' policymaking authority identified in the SAC was irrelevant in evaluating *Monell* liability on a First Amendment Retaliation cause of action. *See* ECF No. 39 at 17:9–17. Each individual defendants' policymaking authority is addressed in turn below.

     *i.*   *Cummins*

In the Opposition, Plaintiff makes another misleading argument about Cummins' role in his claim. Plaintiff, again, points to the lack of investigation when he was passed over for promotion in January 2020, as evidence that the City should be liable for retaliating against him for protected speech that occurred five months later. *See* ECF No. 41 at 19:25–20:18. Plaintiff

9

argues that, while Nikolai killed the promotion lists, Cummins "provided the 'cover' or pretext for Plaintiff's being passed over" by not investigating claims of misconduct against him.  ECF No. 41 at 11:15.  This theory is unreasonable and does not square with the timeline of events outlined in the SAC.  In truth, Cummins' purported policymaking scope regarding investigations is irrelevant in the First Amendment Retaliation context, and cannot be a basis of *Monell* liability against the City as a result.

### ii.   *Nikolai*

In relation to Nikolai, Plaintiff attempts to use bare recitations of the elements of *Monell* liability to avoid dismissal.  For example, when discussing policymaking authority and the denial of overtime, Plaintiff quotes a conclusion from the SAC that the "true reason" in allowing the overtime grant funds to expire was "to punish Plaintiff for his speech."  ECF No. 41 at 19:15–20.  The Court should discard this self-serving conclusion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 686–687 (2009).  As for Nikolai's authority regarding elimination of promotion lists, Plaintiff pleads a vague allegation that Nikolai has the power to terminate such lists and "works with Human Resources to determine" their duration, and—on information and belief—that Nikolai did in fact terminate the lists that Plaintiff was included on.  *See* ECF No. 41 at 18:15–19:10; SAC ¶ 44(c).  Defendants again submit that speculation and self-serving recitations of the elements of *Monell* liability should not be enough to state a claim against the City.

### B.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR FEHA RETALIATION REMAINS SUBJECT TO DISMISSAL DUE TO AN IMPLAUSIBLE CAUSAL LINK.

Defendants argued in their moving papers that Lozada's termination and a single failure to grant an overtime request are not, as a matter of law, adverse employment actions for purposes of a FEHA Retaliation claim.  *See* ECF No. 39 at 19:5–20.  As a result, the only remaining adverse action that is relevant in the FEHA Retaliation context is the termination of promotion lists on June 29, 2020 and October 30, 2020.  Plaintiff did not respond to that argument in the Opposition, but instead argued that Lozada's termination was an adverse employment action in the First Amendment Retaliation context—opposing an argument that Defendants never made.  *See* ECF

10

No. 41 at 24:16–25:2; 17:14–18:12.  Based upon the arguments on the lack of a causal link above in the First Amendment Retaliation context, Defendants submit that Plaintiff's speculative theory that the promotion lists were eliminated because of his complaints about systemic racism in the SCPD is implausible and renders the FEHA Retaliation cause of action subject to dismissal.

### C. PLAINTIFF'S PLEA FOR PUNITIVE DAMAGES REMAINS CONCLUSORY.

After building his speculative theories of liability in the SAC, Plaintiff offers a conclusory statement that Nikolai and Cummins should be liable for punitive damages because they acted with evil motive or intent, or with reckless or callous indifference to Plaintiff's rights, as well as that their actions were taken with "spite" and "ill will" within the meaning of Ninth Circuit Model Civil Jury Instruction 5.5.  SAC ¶ 49.  Plaintiff does little to oppose the conclusory nature of these allegations in the Opposition, other than reiterating them and citing *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159 (E.D. Cal. 2005).  *See* ECF No. 41 at 9:15–25; 25:6–16.  Formulaic recitations of the punitive damages standard are not enough to withstand dismissal. *See Iqbal*, 556 U.S. at 678.  Nothing in *Neveu* contradicts that.  That court denied a motion to strike punitive damages because the motion only contained a "conclusory argument" against punitive damages.  *Neveu v. City of Fresno,* 392 F. Supp. 2d at 1183.  Defendants' argument in the moving papers of the instant Motion is thorough and contains a number of cases that Plaintiff failed to respond to.[4]  *See* ECF No. 39 at 19–20.

Due to the fact that Plaintiff has failed to meaningfully oppose Defendants arguments on this issue, the Court should grant the Motion to Dismiss and find that Plaintiff has not sufficiently pled punitive damages against Nikolai and Cummins.

/ / /

/ / /

/ / /

---

[4] It is worth noting that Plaintiff relied upon *Neveu* in opposing Defendants' Motion to Dismiss the FAC, to no avail.

11

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request that the SAC be dismissed without leave to amend.

Dated: September 21, 2021                      Respectfully submitted,

                                               LIEBERT CASSIDY WHITMORE

                                        By:    */s/ Morin I. Jacob*
                                               Morin I. Jacob
                                               Anthony D. Risucci
                                               Attorneys for Defendants CITY OF
                                               SANTA CLARA, PATRICK
                                               NIKOLAI, and TODD CUMMINS

12

Defendants' Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint; 3:21-cv-01453-SI
9792570.1 SA460-023

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is: **135 Main Street, 7th Floor, San Francisco, California 94105.**

On **September 21, 2021**, I served the foregoing document(s) described as **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** in the manner checked below on all interested parties in this action addressed as follows:

Philip J. Kaplan
Law Offices of Philip Kaplan
3278 Wilshire Blvd., Suite 106
Los Angeles, CA 90010
Telephone: (213)480-8981
Facsimile: (213)480-8941
Email: philipkaplanlaw@gmail.com

*Attorneys for Plaintiff*

☑ **(BY ELECTRONIC SERVICE PROVIDER)** I am readily familiar with the firm's practice for filing electronically. Through use of the Court's CM/ECF electric filing system, I arranged a true and correct copy of the above-reference documents to be electronically served to the e-mail address(es) registered with the court this day in the ordinary course of business following ordinary business practices.

Executed on **September 21, 2021**, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

/s/ *Loren Young*
Loren Young

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

13
Proof of Service

9792570.1 SA460-023